**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THEODORE MICHAEL PREPUTNIK, JR., | ) | CASE NO. 1:25-CV-00598-JDA |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL |
| v. | ) | ARMSTRONG |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY | ) | |
| | ) | |
| Defendant. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |

## I.      INTRODUCTION

Plaintiff Theodore Michael Preputnik, Jr. ("Mr. Preputnik") seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This matter is before the Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The parties have consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1. (ECF No. 7). For the reasons set forth below, the Court AFFIRMS the Commissioner's final decision.

## II.     PROCEDURAL HISTORY

On August 22, 2022, Mr. Preputnik filed his applications for DIB and SSI. (Tr. 70, 275). Mr. Preputnik's applications related to his major depressive disorder, generalized anxiety disorder, long-COVID, acid reflux, irritable bowel syndrome, diabetes, degenerative disc disease, and bone spurs. (Tr. 316).

The Social Security Administration ("SSA") denied Mr. Preputnik's applications initially and upon reconsideration. (Tr. 155-56, 177-78). Mr. Preputnik requested a hearing before an

1

administrative law judge ("ALJ"). (Tr. 223). The ALJ held a telephonic hearing on March 14, 2024, at which Mr. Preputnik was represented by counsel. (Tr. 129). Mr. Preputnik testified, as did an impartial vocational expert ("VE"). On April 17, 2024, the ALJ issued a written decision, finding that Mr. Preputnik was not disabled. (Tr. 7). The ALJ's decision became final on January 31, 2025, when the Appeals Council declined further review. (Tr. 1).

On March 26, 2025, Mr. Preputnik filed his complaint, challenging the Commissioner's final decision. (ECF No. 1). Mr. Preputnik asserts the following assignments of error:

(1)    The ALJ erred at Step Two of the Sequential Evaluation when she failed to properly apply the criteria of Social Security Ruling 96-8p and consider all of Plaintiff's impairments and related limitations when forming the residual functional capacity evaluation.

(2)    The ALJ erred when she failed to support her conclusions or discuss supportability and consistency when she evaluated the opinions of the treating sources.

(3)    The ALJ's RFC finding that Plaintiff could perform his past relevant work was not supported by substantial evidence.

(ECF No. 8, PageID # 1107).

## III.    BACKGROUND

### A.    <u>Personal, Educational, and Vocational Experience</u>

Mr. Preputnik was born in 1977 and was 43 years old on the alleged onset date. (Tr. 275). He has a college degree. (Tr. 317). He is not married and has no minor children. (Tr. 137, 275-76). Mr. Preputnik has prior work experience as an insurance agent, paralegal, and document reviewer for litigation. (Tr. 138-40, 317).

### B.    <u>Relevant Hearing Testimony</u>

#### 1.    *Mr. Preputnik's Testimony*

Mr. Preputnik testified that he experiences significant fatigue and is exhausted all the time. (Tr. 141). He also testified that he has back pain, which keeps him from sitting or standing for long periods, and that he experiences vomiting and diarrhea due to acid reflux and irritable bowel

syndrome. *Id*. He further testified that he has had significant problems with concentration since he contracted COVID-19 in early 2020. *Id*.

Mr. Preputnik testified that he has received outpatient treatment for his long-COVID symptoms and that he received antibiotics for post-COVID pneumonia. (Tr. 143). He also testified that he takes painkillers for his back but is not receiving other treatment, and that he takes medication for his acid reflux, which helps his condition. *Id*. He further testified that he has coughing fits that can be so severe that they make him vomit. (Tr. 145).

Mr. Preputnik testified that he spends most of his day in bed or sitting in a recliner. (Tr. 144). Mr. Preputnik also testified that he can no longer hike or play sports due to his exhaustion and breathing problems, and that he cannot read for pleasure because he has difficulty concentrating. (Tr. 146-47). He further testified that his apartment is typically messy but that he does some dishes. (Tr. 144). He also testified that he does his own shopping, cooking, and laundry. *Id*. He testified that he visits friends once or twice per month and that he plays cards with them or listens to music. (Tr. 145-46). Mr. Preputnik also testified that he often has to cancel plans because of his symptoms. (Tr. 147-48).

### 2. *Vocational Expert's Testimony*

The ALJ asked the VE to consider a hypothetical individual with Mr. Preputnik's age, education, and work experience who could perform light work and could occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, and crawl; frequently be exposed to extreme cold and heat, fumes, odors, dust, gases, poor ventilation, unprotected heights, and dangerous machinery; could not perform assembly line work; and was limited to routine workplace changes. (Tr. 150-51). The VE testified that the hypothetical individual could perform all of Mr. Preputnik's past work. (Tr. 151). The VE also testified that the hypothetical individual could perform jobs existing in significant numbers in the national

economy, including work as an information clerk, cashier, and officer helper. (Tr. 151-52).

In response to a question from Mr. Preputnik's counsel, the VE testified that it would be work-preclusive if the hypothetical individual required two extra 15-minute breaks during the workday or would be absent from work four days per month. (Tr. 152-53). The VE also testified that it would be work-preclusive if the hypothetical individual needed to elevate their legs to heart height and could only stand, walk, or sit for two hours during the workday. (Tr. 153). Finally, the VE testified that the hypothetical individual could not maintain competitive employment if they would be off-task 20 percent or more of the workday. *Id*.

### C.    <u>Relevant Opinion Evidence</u>

#### 1.    *State Agency Medical Consultants*

On November 25, 2022, Steve McKee, M.D., a state agency medical consultant, opined that Mr. Preputnik could occasionally lift or carry 20 pounds and could frequently lift or carry 10 pounds. (Tr. 162). Dr. McKee also opined that Mr. Preputnik could frequently stoop, kneel, crouch, and crawl, occasionally climb ramps and stairs, and never climb ladders, ropes, and scaffolds. *Id*. Finally, Dr. McKee opined that Mr. Preputnik would need to avoid all concentrated exposure to fumes, odors, extreme weather, and hazards. (Tr. 163). On July 26, 2023, Diane Manos, M.D., concurred in Dr. McKee's findings on reconsideration. (Tr. 184-85). The ALJ found that the opinions of the state agency medical consultants were persuasive and supported by the evidence. (Tr. 22).

#### 2.    *State Agency Psychologists*

On November 15, 2022, Vicki Warren, Ph.D., a state agency psychologist, opined that Mr. Preputnik had moderate limitations in his ability to concentrate, persist, or maintain pace and his ability to adapt or manage himself. (Tr. 161). Dr. Warren also opined that Mr. Preputnik had mild limitations in his ability to understand, remember, or apply information and his ability to interact

4

with others. *Id*. Dr. Warren further opined that Mr. Preputnik was moderately limited in his ability to maintain concentration and to complete a normal workday. (Tr. 164). Dr. Warren also opined that Mr. Preputnik retained the ability to perform a variety of work tasks in settings without high production quotas or a fast pace. *Id*. On August 25, 2023, Cynthia Lindsey, Ph.D., concurred in Dr. Warren's findings on reconsideration. (Tr. 186). The ALJ found that the opinions of the state agency psychologists were persuasive. (Tr. 22).

### 3. *Frank Sajen, P.A.-C*

On December 12, 2023, Mr. Sajen completed a mental impairment questionnaire regarding Mr. Preputnik. (Tr. 1066). Mr. Sajen opined that Mr. Preputnik suffers from major depressive disorder and generalized anxiety disorder, which Mr. Sajen believed were related to Mr. Preputnik's medical issues. (Tr. 1066). Mr. Sajen also opined that Mr. Preputnik was "limited but satisfactory" in numerous functional categories. (Tr. 1066-67). Mr. Sajen further opined that Mr. Preputnik was "seriously limited, but not precluded" in his ability to carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; and accept instructions and respond appropriately to criticism from supervisors. *Id*. Mr. Sajen was unable to determine Mr. Preputnik's prognosis. (Tr. 1066). Mr. Sajen was also unable to determine how often Mr. Preputnik's impairments would cause him to be absent from work and how often he would be off-task. (Tr. 1067). The ALJ found that Mr. Sajen's opinion was not persuasive because it was not consistent with the evidence as a whole. (Tr. 22).

### 4. *Gwen Haas, M.D.*

On January 12, 2024, Dr. Haas, Mr. Preputnik's primary care physician, completed a physical medical source statement regarding Mr. Preputnik. (Tr. 1068). Dr. Haas opined that Mr. Preputnik could occasionally lift and carry up to 20 pounds. (Tr. 1069). Dr. Haas further opined

that Mr. Preputnik would be off-task at least 25 percent of the day and that he was incapable of performing even low stress work. *Id*. Dr. Haas also opined that Mr. Preputnik could stand for up to 45 minutes at a time, could stand or walk for fewer than two hours per workday, could sit for approximately two hours per day, and would need five additional one-minute walking periods during the day to avoid clots. (Tr. 1070). She also opined that Mr. Preputnik would need to elevate his legs intermittently. *Id*. Dr. Haas further opined that Mr. Preputnik was unable to resume work and would miss more than four days of work per month. (Tr. 1070-71). Dr. Haas opined that Mr. Preputnik's prognosis was fair but that he experienced profound fatigue from long-COVID and was terrified of his illness recurring. (Tr. 1068, 1071).

The ALJ found that the opinions of Dr. Haas were not persuasive because the evidence did not support such severe limitations and because statements regarding Mr. Preputnik's mental health were outside the scope of treatment. (Tr. 23).

### D.     <u>Relevant Medical Evidence</u>

#### 1.     *Physical Impairments*

On December 5, 2019, prior to the alleged onset date, Mr. Preputnik underwent a laparoscopic colectomy of his sigmoid colon. (Tr. 406-07). At the time of surgery, it was noted that he had sigmoid diverticular disease with thickened bowel and sigmoid mesocolon. (Tr. 407).

On October 18, 2020, prior to his alleged onset date, Mr. Preputnik underwent an MRI of the lumbar spine. (Tr. 674). The MRI revealed diffuse lumbar spondylosis in association with a congenitally small spinal canal. (Tr. 675). The MRI also revealed disc herniations and a possible disc fragment. *Id*. *Id*. Mr. Preputnik underwent back surgery on December 22, 2020. (Tr. 901).

Mr. Preputnik had a follow-up visit with his orthopedic surgeon, Michael D. Eppig, M.D., in February 2021. (Tr. 898). Mr. Preputnik's examination was unremarkable, and Dr. Eppig released Mr. Preputnik to return to work "as he feels." (Tr. 898-99). Dr. Eppig also encouraged

6

Mr. Preputnik to continue walking, stretching, and engaging in activity. (Tr. 899).

On December 20, 2021, Mr. Preputnik had a one-year postoperative appointment. (Tr. 896). Mr. Preputnik reported that he had experienced general back pain for the previous ten months. *Id.* He also reported that he attempted to work in February but that he was unable to work and lost his job. *Id.* Mr. Preputnik further reported ongoing cardiac and respiratory problems following a COVID-19 infection and stated that he suffered from long-COVID. *Id.* He admitted that he was not engaging in activity and that he spent most of the day in a recliner. *Id.* He said that he tended to feel better when he moved around. *Id.* On examination, Mr. Preputnik displayed normal balance, posture, gait, sensation, and range of motion. *Id.* He was encouraged to be as active as possible and given a prescription for physical therapy and an x-ray. (Tr. 897).

On September 16, 2022, Mr. Preputnik went to North Shore Gastroenterology to schedule a colonoscopy. (Tr. 755). He reported an increase in acid reflux and said it was occurring daily after he stopped taking a proton pump inhibitor two weeks earlier. *Id.* He reported epigastric burning, heartburn, nausea, and vomiting, but denied abdominal pain, belching, rectal bleeding, constipation, diarrhea, dysphagia, hemorrhoids, indigestion, or jaundice. (Tr. 756). On examination, he displayed positive bowel sounds in all quadrants. *Id.* It was noted that he walked with a normal gait. *Id.*

Mr. Preputnik underwent an endoscopy on October 10, 2022, which did not reveal any abnormal findings. (Tr. 767). He also underwent a colonoscopy on the same day, which found mild internal hemorrhoids and evidence of a prior end-to-side colo-colonic anastomosis in the sigmoid colon. (Tr. 775).

Mr. Preputnik saw a cardiologist on September 1, 2023. (Tr. 1072). He reported shortness of breath with moderate activity and long-COVID. *Id.* He denied chest pains. *Id.* Mr. Preputnik reported using marijuana once per week. (Tr. 1073). His physical examination was unremarkable.

(Tr. 1075). His blood pressure medication was increased, and he was started on cholesterol medication. (Tr. 1077). It was also noted that his coronary calcium score CT showed infiltrates in his lungs, which were likely related to COVID-19. *Id*. His condition was assessed as stable. *Id*.

### 2. *Mental Health Issues*

On March 14, 2022, Mr. Preputnik presented to Gwen Haas, M.D., complaining of chills, sweats, and vomiting. (Tr. 633). He reported a great deal of family stress involving his parents, whom he lived with for financial reasons. *Id*. He also reported little interest or pleasure in doing things; feeling down, depressed, or hopeless; poor appetite; difficulty sleeping; lack of energy; and difficult concentrating. *Id*. However, he denied suicidal or homicidal ideation. *Id*. Dr. Haas diagnosed Mr. Preputnik with severe depression and noted that he needed a mental health evaluation "asap." *Id*.

Mr. Preputnik received counseling at Signature Health beginning in March 2022. (Tr. 686-753, 778-893, 907-950). As Mr. Preputnik notes, during treatment sessions, he presented as anxious, depressed, and/or nervous. (*See, e.g.*, Tr. 910, 925, 935, 948). The Commissioner notes that Mr. Preputnik also regularly reported feeling good and that mental status examinations frequently did not reveal abnormal findings. (*See, e.g.*, Tr. 701, 709, 731, 736, 743, 840-41, 928, 938).

## IV.    THE ALJ'S DECISION

The ALJ first determined that Mr. Preputnik met the insured status requirements of the Social Security Act through June 30, 2026. (Tr. 12). The ALJ further determined that Mr. Preputnik had not been engaged in substantial gainful activity since May 1, 2021, the alleged onset date. *Id*.

The ALJ next determined that Mr. Preputnik had the following severe impairments: lumbar spinal stenosis; obesity; depressive, bipolar and related disorders; and anxiety and obsessive-

compulsive disorders. *Id*. The ALJ also determined that Mr. Preputnik suffered from several non-severe impairments, including other disorders of the gastrointestinal system and long-COVID. (Tr. 12-13). The ALJ found, however, that none of Mr. Preputnik's severe impairments, whether considered singly or in combination, met or medically equaled the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13).

The ALJ next determined that Mr. Preputnik had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)
> except: occasionally climb ramps and stairs; never climb ladders, ropes,
> or scaffolds; frequently balance, stoop, kneel, crouch, and crawl; frequent
> exposure to extreme cold, extreme heat, humidity, fumes, odors, dusts,
> gases, poor ventilation, and hazards, such as unprotected heights and
> dangerous machinery; cannot work at a production rate pace; and limited
> to routine workplace changes.

(Tr. 17).

The ALJ next found that Mr. Preputnik could perform his past relevant work as an insurance sales agent, insurance sales agent/policy holder information clerk, and paralegal. (Tr. 23). Alternatively, the ALJ determined that Mr. Preputnik could perform jobs that existed in significant numbers in the national economy, including work as an information clerk, cashier, or office helper. (Tr. 25). Accordingly, the ALJ determined that Mr. Preputnik was not disabled. (Tr. 26).

## V.     LAW & ANALYSIS

### A.     <u>Standard of Review</u>

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986)

(*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 Fed. Appx. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g).

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quotation omitted). The standard for "substantial evidence" is "not high." *Id*. While it requires "more than a mere scintilla," "[i]t means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted).

In addition to considering whether substantial evidence supports the Commissioner's decision, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)) (alteration in original).

B.    **Standard for Disability**

To establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a). A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.[1]

Consideration of disability claims follows a five-step review process. 20 C.F.R. §404.1520. First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(d) and 416.920(d).

Before considering Step Four, the ALJ must determine the claimant's residual functional

---

[1] The DIB and SSI regulations cited herein are generally identical. Accordingly, for convenience, in some instances, citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 *et seq*. The analogous SSI regulations are found at 20 C.F.R. § 416.901 *et seq*., corresponding to the last two digits of the DIB cite (*e.g.*, 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).

capacity, *i.e.*, the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e) and 416.930(e). At the fourth step, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, the claimant is not disabled if other work exists in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g). *See Abbott*, 905 F.2d at 923.

    **C.**   **Analysis**

       *1.*   ***The ALJ's Step Two Analysis***

In his first assignment of error, Mr. Preputnik argues that the ALJ erred at Step Two because the ALJ found that Mr. Preputnik's long-COVID and disorders of the gastrointestinal system were non-severe impairments and then did not include limitations related to those impairments in the RFC. Mr. Preputnik's argument is not well-taken.

At Step Two of the sequential evaluation process, an ALJ must determine whether a claimant's medically determinable impairment is a "severe" impairment. *See* 20 C.F.R. § 404.1520(a)(4)(ii). A "severe" impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). "Step two has been described as a '*de minimus* hurdle'; that is, 'an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988)).

The ALJ's determination that an impairment is non-severe does not end the inquiry. Rather, Social Security Ruling ("SSR") 96-8p provides that "[i]n assessing RFC, the adjudicator must

consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" 1996 WL 374184, at *5 (July 2, 1996). SSR 96-8p further states that, "[w]hile a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim." *Id.* This standard recognizes that "the definition of a non-severe impairment contemplates that non-severe impairments may very well impose some type of limitation on basic work activities" and that "an ALJ's conclusion that an impairment is non-severe is not tantamount to a conclusion that the same impairment . . . does not impose *any* work-related restrictions." *Patterson v. Colvin*, No. 5:14-cv-1470, 2015 WL 5560121, at *4 (N.D. Ohio Sept. 21, 2015) (quoting *Katona v. Comm'r of Soc. Sec.*, No. 14-cv-10417, 2015 WL 87617, at *6 (E.D. Mich. Feb. 27, 2015) (emphasis in original)). When an ALJ finds severe and non-severe impairments at Step Two and continues with the subsequent steps in the sequential evaluation process, any error at Step Two is harmless. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Here, the ALJ found that Mr. Preputnik's gastrointestinal disorder and his long-COVID constituted non-severe impairments. (Tr. 12-13). However, despite finding that Mr. Preputnik's long-COVID was a non-severe impairment, the ALJ expressly considered evidence regarding his long-COVID when formulating the RFC. Specifically, in evaluating Dr. Haas' opinion, the ALJ noted that, while Dr. Haas opined that Mr. Preputnik had limitations due to long-COVID, he "only sought treatment for long-COVID one time after contracting the virus in early 2020." (Tr. 23). The ALJ further found that, at that time, Mr. Preputnik reported infrequent palpitations and shortness of breath. *Id.* However, the ALJ further noted that Mr. Preputnik reported regularly smoking marijuana. *Id.* The ALJ concluded that "[w]ithout evidence of any treatment from long-COVID aside from one appointment, I cannot find the determination that the claimant is unable to work

due to long-COVID symptoms persuasive." *Id*. Because the ALJ considered Mr. Preputnik's long-COVID in formulating the RFC, any Step Two error was harmless.

Unlike long-COVID, the ALJ did not expressly address Mr. Preputnik's gastrointestinal issues when formulating the RFC. Despite that omission, however, remand is not warranted because the ALJ's discussion of those issues at Step Two is sufficient to fulfill the ALJ's duty to consider Mr. Preputnik's non-severe impairments.

In *Emard v. Commissioner of Social Security*, 953 F.3d 844 (6th Cir. 2020), the Sixth Circuit clarified an ALJ's obligations under SSR 96-8p with respect to non-severe impairments. The court noted that "[d]istrict courts in this circuit have held that an ALJ need not specifically discuss all nonsevere impairments in the residual-functional-capacity assessment when the ALJ makes clear that her decision is controlled by SSR 96-8p." *Id*. at 851-52. The court agreed with those cases, holding that the ALJ's "express reference to SSR 96-8p, along with her discussion of the functional limitations imposed by [the claimant's] nonsevere impairments at step two of the analysis" meant that the ALJ complied with SSR 96-8p even though the ALJ failed to specifically discuss the claimant's non-severe impairments when formulating the RFC. *Id*. at 852.

Here, the ALJ cited SSR 96-8p while summarizing the applicable legal standards, noting that she must "consider all of the claimant's impairments, including impairments that are not severe." (Tr. 12). After determining Mr. Preputnik's severe and non-severe impairments, the ALJ likewise stated that she "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." (Tr. 13). And, while the ALJ did not specifically address Mr. Preputnik's gastrointestinal symptoms when formulating the RFC, the ALJ did discuss those symptoms at Step Two. In particular, the ALJ found that Mr. Preputnik had a history of diverticulitis, which necessitated a laparoscopic sigmoid colon resection and splenic flexure takedown in December 2019. (Tr. 13).

14

The ALJ also cited records showing that Mr. Preputnik reported problems with acid reflux and intermittent diarrhea. *Id*. However, the ALJ found that Mr. Preputnik's medication provided good control over his symptoms and that an endoscopy and colonoscopy from October 2022 were normal. *Id*.

While it may have been preferable for the ALJ to address Mr. Preputnik's gastrointestinal condition at Step Four as well, the ALJ's analysis complied with SSR 96-8p and *Emard*. Indeed, post-*Emard* decisions from this district have routinely affirmed the Commissioner in similar circumstances. *See, e.g., Holt v. Comm'r of Soc. Sec.*, No. 1:23-CV-00209-BMB, 2023 WL 8770503, at *8 (N.D. Ohio Nov. 1, 2023) (affirming ALJ's decision despite failure to discuss non-severe impairments when formulating RFC where ALJ cited to SSR 96-8p, discussed the functional limitations claimant's non-severe impairments imposed at Step Two, and stated that ALJ considered non-severe impairments when formulating RFC), *report and recommendation adopted*, 2024 WL 83029 (N.D. Ohio Jan. 8, 2024); *Yost v. Comm'r of Soc. Sec.*, No. 1:23-CV-00699-JRA, 2024 WL 1054234, at *7-9 (N.D. Ohio Jan. 26, 2024) (same), *report and recommendation adopted*, 2024 WL 1051654 (N.D. Ohio Mar. 11, 2024); *Nelson v. Comm'r of Soc. Sec.*, No. 1:21-CV-01784-JG, 2023 WL 2435322, at *16 (N.D. Ohio Jan. 31, 2023), *report and recommendation adopted*, 2023 WL 2431989 (N.D. Ohio Mar. 9, 2023). Mr. Preputnik's first assignment of error is not well-taken.

### 2.    *The ALJ's Evaluation of the Opinion Evidence*

In his second assignment of error, Mr. Preputnik argues that the ALJ erred in evaluating the opinions of Mr. Sajen and Dr. Haas because the ALJ did not adequately address the supportability and consistency of those opinions and because evidence in the record corroborated their opinions.

Because Mr. Preputnik filed his disability claim after March 27, 2017, the "treating

physician" rule, pursuant to which an ALJ was required to give controlling weight to an opinion from a treating physician absent good reason not to, does not apply. *See* 20 C.F.R. § 404.1527; *Merrell v. Comm'r of Soc. Sec.*, 1:20-cv-769, 2021 WL 1222667, at *6 (N.D. Ohio Mar. 16, 2021), *report and recommendation adopted*, 2021 WL 1214809 (N.D. Ohio Mar. 31, 2021). Instead, the current regulations state that the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

The SSA considers opinions from medical sources under five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as familiarity with other evidence in the claim or with the disability program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(c). Section 404.1520c(b)(1) specifically provides that "it is not administratively feasible for [the ALJ] to articulate in each determination or decision how [the ALJ] considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b)(1). Of the five factors, supportability and consistency are the most important, and an ALJ must explain how she considered them. 20 C.F.R. § 404.1520c(b)(2). The ALJ "may" but "is not required to" explain how the ALJ considered the remaining factors. *Id.*

The "supportability" factor looks to how well the medical source supports the opinion with objective medical evidence from the record. *See* 20 C.F.R. § 404.1520c(c)(1). "In other words, the supportability analysis focuses on the physicians' explanations of the opinions." *Lavenia v. Comm'r of Soc. Sec.*, No. 3:21cv674, 2022 WL 2114661, at *2 (N.D. Ohio June 13, 2022) (quoting *Coston v. Comm'r of Soc. Sec.*, No. 20-12060, 2022 WL 989471, at *3 (E.D. Mich. Mar. 31, 2022)). The "consistency" factor looks to how consistent the medical opinion is with evidence from other medical and nonmedical sources. *See* 20 C.F.R. § 404.1520c(c)(2). "As long as the

ALJ discussed the supportability and consistency of the opinion and supported [the ALJ's] conclusions with substantial evidence within his decision, the Court will not disturb [the ALJ's] decision." *Njegovan v. Comm'r of Soc. Sec. Admin.*, No. 5:21-CV-00002-CEH, 2022 WL 1521910, at *4 (N.D. Ohio May 13, 2022).

### i.      Mr. Sajen

As noted above, Mr. Sajen opined that Mr. Preputnik was "limited but satisfactory" in a number of functional categories and was "seriously limited, but not precluded" in his ability to carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; and accept instructions and respond appropriately to criticism. (Tr. 1066-67). The ALJ rejected Mr. Sajen's opinion as follows:

> I am not persuaded by the opinion of Frank Sajen, PA-C (12F). On December 12, 2023, Physician Assistant Sajen opined that the claimant was limited to serious limited in their ability to sustain concentration and persistence, the claimant was limited in their ability to understand, remember and adapt, and had no limitations to serious limitations interacting with others (12F). While the undersigned concurs that the claimant has mental limitations, the evidence mostly shows that the claimant's depression and anxiety symptoms were situational (8F). The claimant reported that their depression and anxiety were all related to their housing situation (8F). The claimant denied having other symptoms when they were not dealing with life stressors (8F). This does not support Physician Assistant Sajen's opinion that the claimant had serious limitations mentally. Therefore, I am not persuaded by this opinion.

(Tr. 22).

The ALJ's analysis addressed the consistency of Mr. Sajen's opinion, noting that it was inconsistent with evidence showing that Mr. Preputnik's depression was situational and that he was asymptomatic when life stressors were absent. The ALJ did not expressly analyze the opinion's supportability. However, the ALJ discussed Mr. Sajen's treatment notes earlier in the decision, including notes showing that: Mr. Preputnik's depression and anxiety were under control (Tr. 908); he had moved into a new apartment, was smoking marijuana most days, and was taking Zoloft, which helped his mood (Tr. 923); and his depressed mood was situational due to his

housing situation and his disability application (Tr. 21) (citing Tr. 908, 923, 933).

An ALJ's decision need not "fit neatly into the 'first assess consistency and supportability, then consider other factors' framework," as "the regulations do not require the ALJ to issue a perfect decision." *Merrell*, 2021 WL 1222667 at *6 (citation omitted). Moreover, a reviewing court must read the ALJ's decision as a whole. *Taylor v. Kijakazi*, No. 1:20-cv-01121, 2021 WL 4477865, *8 (N.D. Ohio Sept. 30, 2021). Thus, courts in this district have held that an ALJ adequately addresses supportability where the ALJ discusses the medical source's treatment records earlier in the decision, even if the ALJ does not specifically reference supportability when evaluating the medical source's opinion. *See Guthrie v. Comm'r of Soc. Sec.*, No. 3:22 CV 1309, 2023 WL 6258259, at *3 (N.D. Ohio Sept. 26, 2023) (holding that ALJ adequately addressed supportability by reviewing in detail evidence on which state agency psychologists relied); *Bradley v. Comm'r of Soc. Sec.*, No. 1:23-cv-00082, 2023 WL 8529099, at *8 (N.D. Ohio Dec. 8, 2023) (holding that remand was not warranted where decision, read as a whole, showed that ALJ adequately considered supportability of opinion). Given the ALJ's earlier discussion of Mr. Sajen's treatment notes showing improvement in Mr. Preputnik's condition, the ALJ adequately addressed the supportability factor with respect to Mr. Sajen's opinion.

Mr. Preputnik also argues that the ALJ erred because the ALJ ignored treatment records that he believes are consistent with Mr. Sajen's opinions and that should have led the ALJ to adopt a more limited RFC. However, "the Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). A reviewing court may not "try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.

1984)); *see also Anderson v. Comm'r of Soc. Sec.*, No. 1:21-CV-1471, 2022 WL 4545188, at *2

(N.D. Ohio Sept. 29, 2022) ("it is also well-established that as long as the ALJ cites substantial,

legitimate evidence to support the conclusion reached, the reviewing court may not second-guess

that decision"). Mr. Preputnik's argument is a request for the Court to reweigh the evidence, which

it cannot do. The ALJ thus did not err in evaluating Mr. Sajen's opinion.

### ii.       *Dr. Haas*

Mr. Preputnik also challenges the ALJ's evaluation of Dr. Haas' opinion. Dr. Haas opined

that, due to mental health issues, Mr. Preputnik was unable to resume work, would be off-task at

least 25 percent of the day, and was incapable of performing even low stress work. (Tr. 1070-71).

Dr. Haas also opined that Mr. Preputnik could stand for up to 45 minutes at a time, stand or walk

for fewer than two hours per workday, sit for approximately two hours per workday, required

additional one-minute walking periods every five minutes to avoid clots, and would need to elevate

his legs intermittently. (Tr. 1070).

The ALJ addressed Dr. Haas' opinion as follows:

> I am also not persuaded by the opinion of Gwen Haas, M.D. (13F). On
> January 12, 2024, Dr. Haas opined that the claimant could occasionally
> lift and carry up to 20 pounds, would be offtask 25% of the workday, was
> incapable of low stress work, could stand and walk less than 2 hours in
> an 8-hour workday, and could sit up to 4 hours in an 8-hour workday
> (13F). Dr. Haas also opined that the claimant was unable to work, should
> intermittently elevate their legs, would be absent more than four days
> each month, has profound fatigue, and was terrified of working due to
> catching COVID-19 again (13F). The evidence does not support any
> portion of this opinion. Dr. Haas stated that they treated the claimant for
> long COVID, gastroesophageal reflux disease, irritable bowel syndrome,
> hypertension and chronic pain, but opined that the claimant was
> incapable of even low stress work due to their mental health symptoms,
> which were under the care of a psychiatrist (13F/1-2). Comments about
> the claimant's mental health are outside of the scope of their treatment
> with the claimant. Dr. Haas stated that the claimant had limitations due
> to long-COVID but they only sought treatment for long-COVID one time
> after contracting the virus in early 2020 (3F; 14F). At this appointment,
> the claimant reported infrequent palpitations and shortness of breath with
> moderate physical activity (14F/1). However, the claimant also admitted

to regularly smoking marijuana (8F; 14F). The claimant's smoking could also cause the shortness of breath that the claimant complained of. Without evidence of any treatment for long-COVID aside from one appointment, I cannot find the determination that the claimant is unable to work due to long-COVID symptoms persuasive. Furthermore, there is no evidence that the claimant struggled with standing and walking to warrant an opinion that the claimant could only stand and walk 2 hours in an 8-hour workday. Physical examination notes show normal gait, no tenderness to palpation to any joint, and normal strength leg raising (9F). For these reasons, I am not persuaded by this opinion.

(Tr. 23).

The ALJ adequately addressed the consistency factor by noting that Dr. Haas' opinions were inconsistent with Mr. Preputnik's modest treatment history for long-COVID and with records showing that he had a normal gait, no tenderness, and normal strength. *See Merrell*, 2021 WL 1222667, at *7 (holding that ALJ's decision to discount weight given to opinion from treating physician was supported by substantial evidence where opinion was inconsistent with other evidence in the record); *Creter v. Saul*, No. 1:20-cv-00840, 2021 WL 809323, at *11 (N.D. Ohio Mar. 3, 2021) (holding that ALJ did not err where ALJ specifically cited treatment records ALJ believed were inconsistent with treating physician's opinion and explained why). Substantial evidence also supports the ALJ's conclusion that Dr. Haas' opinions regarding Mr. Preputnik's mental health limitations were outside the scope of treatment. *Cf.* 20 C.F.R. § 404.1520c(c)(4) ("The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.").

While the ALJ adequately addressed consistency, however, the same cannot be said of supportability. True, the ALJ stated that the evidence did not "support" Dr. Haas' opinion. (Tr. 23). However, despite using the term "support," the ALJ's analysis went to consistency, not

supportability. The ALJ found that Dr. Haas' opinion was not persuasive because treatment records showed that Mr. Preputnik reported infrequent palpitations and shortness of breath; smoked marijuana; did not receive extensive treatment for long-COVID; and had a normal gait and normal leg strength during physical examinations. (Tr. 23). None of the records the ALJ cited were Dr. Haas' treatment notes. Instead, the ALJ found that Dr. Haas' opinions were inconsistent with treatment notes from other providers. That is a consistency analysis, not a supportability one.

Nor did the ALJ discuss Dr. Haas' treatment notes elsewhere in the decision in a manner that would enable the Court to conclude that the ALJ evaluated the opinion's supportability. To the contrary, the ALJ cited to Dr. Haas' treatment notes only three times in the decision, and did so merely to note that Mr. Preputnik had complained about certain symptoms. *See* Tr. 13 (citing Dr. Haas' treatment records to note that Mr. Preputnik had COVID-19 and pneumonia in 2020); Tr. 18 (citing Dr. Haas' treatment records to note that Mr. Preputnik had a history of worsening lower back pain); Tr. 19 (citing Dr. Haas' treatment records to note that Mr. Preputnik had a history of depression and anxiety).

Despite the ALJ's failure to analyze the supportability of Dr. Haas' opinion, the Court concludes remand is not warranted because the ALJ's error was harmless. An ALJ's failure to adequately explain the supportability or consistency of a medical opinion may be harmless in three circumstances: (i) when the opinion was 'so patently deficient that the Commissioner could not possibly credit it'; (ii) when the Commissioner made findings consistent with the opinion; or (iii) the Commissioner otherwise met the goals of the regulations by indirectly attacking the supportability or consistency of the opinion." *Croft v. Comm'r of Soc. Sec.*, No. 3:22-CV-00511, 2022 WL 17717495, at *8 (N.D. Ohio Nov. 10, 2022) (report and recommendation) (quoting

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).[2]

The first of those circumstances applies here, as Dr. Haas provided her opinions in a check-box form that lacks any meaningful explanation of her opinions. (Tr. 1068). The Sixth Circuit has held that a check-box opinion without explanation is 'patently deficient." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 475 (6th Cir. 2016). Accordingly, a number of courts in this district have held that an ALJ's failure to properly analyze the supportability or consistency of an opinion is harmless where the medical source offered that opinion through a check-box form. *See Croft*, 2022 WL 17717495, at *9 (holding that ALJ's inadequate evaluation of supportability and consistency was harmless where physician "gave little to no explanation for any of her checked or fill-in-the-blank answers" and "did not incorporate any treatment notes or attach any other supporting documents"); *Woodard v. Comm'r of Soc. Sec.*, No. 5:22-cv-01728, 2023 WL 5842016, at *4 (N.D. Ohio Sept. 11, 2023) ("Because [medical source's] opinion is a checkbox form, it is 'patently deficient' and of so little evidentiary value that failure to offer an explanation would be harmless"); *Rambo v. Comm'r of Soc. Sec.*, No. 1:24-cv-00129-BYP, 2024 WL 3813417, at *7 (N.D. Ohio July 9, 2024), *report and recommendation adopted sub nom.*, 2024 WL 4532777 (N.D. Ohio Oct. 21, 2024) (holding that any error in failing to address the supportability of a medical opinion was harmless because opinion was expressed in check-box form, and was therefore patently deficient).

It is true that, in addition to checking the relevant boxes on the form, Dr. Haas provided some limited detail regarding Mr. Haas' symptoms, particularly with respect to his long-COVID and associated fears of reinfection. As this Court and other courts in this district have held, however, a medical opinion may constitute a patently deficient check-box form even where the

---

[2] *Wilson* pre-dated the revisions to the regulations eliminating the treating physician rule. However, "district courts within this circuit have applied that analysis to the post-March 27, 2017 regulations." *Croft*, 2022 WL 17717495, at *8 n.5 (citing cases).

medical source provides limited additional commentary. *See, e.g., Pica Ortiz v. Comm'r of Soc. Sec.*, No. 1:23-CV-00879-JG, 2024 WL 1660131, at *8 (N.D. Ohio Mar. 13, 2024) (holding that "limited explanations" offered by medical source did not "convert the checkbox form-nature" of medical source's opinion) (citing cases), *report and recommendation adopted*, 2024 WL 1655786 (N.D. Ohio Apr. 17, 2024); *Woodard*, 2023 WL 5842016, at *3 (holding that opinion constituted check-box opinion because description of diagnosis and symptoms were cursory and generic and medical source "did not elaborate on why the diagnosis and symptoms supported her checked-off opinion"). Here, the additional commentary that Dr. Haas provided is limited and conclusory, and Dr. Haas did not cite to any treatment records or other objective medical evidence to support her opinion.

Likewise, the fact that the ALJ did not herself did not rely on the check-box nature of Dr. Haas' opinion is irrelevant, as "the Sixth Circuit has affirmed the rejection of such opinions even when the ALJ does not 'expressly cite the unsupported checkbox format as a basis' for rejecting an opinion." *Rambo*, 2024 WL 3813417, at *7 (quoting *Gallagher v. Berryhill*, No. 5:16-CV-01831, 2017 WL 2791106, at *9 (N.D. Ohio June 12, 2017)); *see also Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566-68 (6th Cir. 2016). Thus, while the ALJ erred in failing to evaluate the supportability of Dr. Haas' opinion, that error was harmless in light of the patent deficiency of the opinion. Mr. Preputnik's second assignment of error is not well-taken.

### 3. *The ALJ's Step Four Analysis*

Finally, Mr. Preputnik argues that the ALJ erred at Step Four in determining that Mr. Preputnik could perform his past relevant work. As noted above, "Step 4 of the sequential analysis requires the ALJ to determine whether an applicant is capable of performing [his] past relevant work." *Green v. Comm'r of Soc. Sec.*, No. 4:22-CV-01731-DAC, 2023 WL 5831431, at *5 (N.D. Ohio Sept. 8, 2023) (citing 20 C.F.R. § 404.1520(e)). "Where substantial evidence supports the

23

ALJ's conclusion that a claimant can perform [his] past relevant work, the Commissioner's denial of benefits is proper." *Id.* (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)).

Mr. Preputnik argues that an ALJ errs where the ALJ fails to compare the demands of a claimant's past relevant work to the claimant's current abilities. However, he does not argue that the ALJ actually failed to conduct that analysis here. Instead, Mr. Preputnik argues that the ALJ erred at Step Four because the ALJ should have adopted a more restrictive RFC in light of Mr. Preputnik's testimony and other evidence in the record, and because a more restrictive RFC would have precluded Mr. Preputnik from performing his past work. As the Commissioner correctly responds, Mr. Preputnik's argument is a request for the Court to second-guess the ALJ's weighing of the evidence, which the Court cannot do. *See Jones*, 336 F.3d at 477; *O'Brien*, 819 F. App'x at 416. Substantial evidence supports the ALJ's RFC—and thus the ALJ's conclusion that Mr. Preputnik could perform his past relevant work—even if other evidence in the record could have supported a different result. Mr. Preputnik's third assignment of error is without merit.

## VI.   CONCLUSION

Based on the foregoing, the Court AFFIRMS the Commissioner's final decision denying Mr. Preputnik's applications for DIB and SSI.

Dated: November 17, 2025

*/s Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

24